UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JANE DOE and JOHN DOE, *individually and on behalf of Baby Doe*,<br><br>Plaintiffs,<br><br>v.<br><br>LUCINDA E. JESSON, *in her official capacity as Commissioner of the Minnesota Department of Human Services*, LORI SWANSON, *in her official capacity as Minnesota Attorney General*, and SAMUEL MOOSE, *in his official capacity as Commissioner of Health and Human Services for the Mille Lacs Band of Ojibwe*,<br><br>Defendants. | Civil No. 15-2639 (JRT/SER)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Jeffrey S. Storms, **NEWMARK STORMS LAW OFFICE**, 100 South Fifth Street, Suite 2000, Minneapolis, MN  55402; Mark D. Fiddler, **FIDDLER LAW OFFICE, P.A.**, 6800 France Avenue South, Suite 190, Edina, MN  55435; and R. Daniel Rasmus, **HOVLAND AND RASMUS, PLLC**, 6800 France Avenue South, Suite 190, Edina, MN  55435, for plaintiffs.

Scott H. Ikeda, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE,** 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for defendants Lucinda E. Jesson and Lori Swanson.

Todd R. Matha, Solicitor General of the Mille Lacs Band of Ojibwe, and Barbara Cole, Senior Deputy Solicitor General of the Mille Lacs Band of Ojibwe, **MILLE LACS BAND OF OJIBWE OFFICE OF THE SOLICITOR GENERAL**, 43408 Oodena Drive, Onamia, MN  56359, for defendant Samuel Moose.

Plaintiffs John Doe and Jane Doe[1] bring this constitutional challenge individually and on behalf of their son, Baby Doe, against Lucinda Jesson as Commissioner of the Minnesota Department of Human Services ("the Commissioner"), Lori Swanson as

---

[1] The Plaintiffs in this case have moved to proceed under the pseudonyms "John Doe" and "Jane Doe." The motion is unopposed. The Court will grant the motion to proceed under pseudonyms and refer to the Plaintiffs as John and Jane Doe. The Court will refer to their son as "Baby Doe" and the parents' preferred adoptive family as "the Adoptive Parents."

Minnesota Attorney General ("the Attorney General") (together, "state Defendants"), and Samuel Moose as Commissioner of Health and Human Services for the Mille Lacs Band of Ojibwe ("Commissioner Moose"). Plaintiffs argue that the Minnesota Indian Family Preservation Act ("MIFPA") provision requiring notice to a tribe of a voluntary adoption proceeding involving an Indian child violates the parents' due process and equal protection rights under the Fourteenth Amendment. This matter is now before the Court on the Plaintiffs' Motion to Proceed under Pseudonyms and Motion for a Preliminary Injunction. Because the Court concludes that there is no threat of irreparable harm to the Plaintiffs of complying with MIFPA's notice requirements, the Court will deny the preliminary injunction.

## BACKGROUND

### I.    THE PLAINTIFFS AND BABY DOE ADOPTION PROCEEDINGS

Baby Doe was born to biological parents John and Jane Doe in Minneapolis in April 2015. (Verified Compl. for Declaratory & Injunctive Relief ("Compl.") ¶ 28, June 3, 2015, Docket No. 1.) John and Jane Doe are both enrolled members of Indian tribes. (*Id.* ¶¶ 3-4.) They are not domiciled within, nor do they reside on, an Indian reservation. (*Id.*) John and Jane Doe are not married, but they have been a couple continuously living together since 2003. (*Id.* ¶ 29.) Baby Doe is not currently an enrolled member of an Indian tribe, but Jane Doe believes he is eligible for membership in the Mille Lacs Band of Ojibwe – of which she is a member – because she has given birth to other children (fathered by John Doe) who are enrolled in the Mille Lacs Band of Ojibwe. (*Id.* ¶ 5.)

John and Jane Doe have voluntarily decided that adoption is in the best interests of Baby Doe, "in light of their personal circumstances." (*Id.* ¶ 30.) They have chosen to use a private adoption agency ("Adoption Agency") that offers private direct placement, allowing John and Jane Doe to select Baby Doe's adoptive parents ("the Adoptive Parents"). (*Id.* ¶ 31.) The Adoptive Parents are not of Indian descent. (*Id.* ¶ 34.) They have made an open adoption plan with John and Jane Doe, however, to enable Baby Doe to stay connected to his Indian heritage. (*Id.* ¶ 35.) The open adoption plan would allow the Adoptive Parents and John and Jane Doe to share pictures and text messages. (*Id.*) It would also allow John and Jane Doe to meet with Baby Doe occasionally. (*Id.*) The Adoptive Parents have already adopted another son, and they used a similar open arrangement with that child's parents. (*Id.* ¶¶ 34-35.)

On May 8, 2015, John and Jane Doe placed Baby Doe with the Adoptive Parents for eventual adoption. (*Id.* ¶ 41.) The placement was made pursuant to a Hennepin County Juvenile Court preadoptive custody order. (*Id.*) The adoption proceeding is ongoing. The next step is for John and Jane Doe to consent to the adoption in state court. (*Id.*) If they fail to consent within 60 days of the placement – that is, if they do not consent by July 8, 2015 – the state court must refer the matter to the Hennepin County child protection agency to determine whether John and Jane Doe have abandoned Baby Doe and therefore should have their parental rights terminated. (*Id.*); Minn. Stat. § 259.47, subd. 8. John and Jane Doe have not yet given their consent, due to what they argue are unconstitutional tribal notification requirements.

**II.   MINNESOTA INDIAN FAMILY PRESERVATION ACT**

The Indian Child Welfare Act of 1978 ("ICWA") was passed by Congress to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." 25 U.S.C. § 1902. One critical provision of ICWA is its requirement that:

> In any **involuntary** proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child **shall notify** the parent or Indian custodian and **the Indian child's tribe**, by registered mail with return receipt requested, **of the pending proceedings and of their right of intervention**.

25 U.S.C. § 1912(a) (emphasis added).

MIFPA, Minnesota's state counterpart to ICWA, provides even broader rights for tribes. Unlike ICWA, which is focused on involuntary adoptive proceedings, MIFPA grants Indian tribes a right to intervene in both involuntary and voluntary child placement proceedings where an Indian child is involved. Minn. Stat. § 260.761, subds. 2, 3. Section 260.761, subdivision 3, requires that "the agency or person [with reason to believe an Indian child is the subject of the voluntary adoption proceeding] shall notify the Indian child's tribal social services agency by registered mail with return receipt requested of the pending proceeding and of the right of intervention under subdivision 6." Subdivision 6 goes on to provide a blanket right of intervention for tribes: "In any state court proceeding for the voluntary adoptive or preadoptive placement of an Indian child, the Indian child's tribe shall have a right to intervene at any point in the proceeding." Minn. Stat. § 260.761, subd. 6.

Under MIFPA, an "Indian child" is defined as "an unmarried person who is under age 18 and is: (1) a member of an Indian tribe; or (2) eligible for membership in an Indian tribe." Minn. Stat. § 260.755, subd. 8. In this case, Baby Doe qualifies as an Indian child under the second category – he is not currently a member of an Indian tribe, but he is eligible for membership in the Mille Lacs Band of Ojibwe tribe. (Compl. ¶ 5.) The Plaintiffs explained at the motions hearing that the tribe was not given notice when Baby Doe was placed with the Adoptive Parents pursuant to a state court preadoptive custody order in May.

### III.  FEDERAL COURT ACTION

On June 3, 2015, the Plaintiffs filed a Complaint in federal district court, requesting declaratory and injunctive relief enjoining Minnesota state officials from enforcing MIFPA. Specifically, the Plaintiffs claim that MIFPA's tribal notice requirements in voluntary adoption cases violate their due process and equal protection rights under the Fourteenth Amendment. John and Jane Doe seek an injunction from this Court, enjoining the enforcement of subdivisions 3 and 6 of MIFPA, which provide for notice to the tribe when an Indian child is the subject of an adoption proceeding and gives the tribe the right to intervene at any time, respectively.

On June 24 and 25, Commissioner Moose and the state Defendants each separately filed motions to dismiss. Because the Plaintiffs have not yet had an opportunity to respond, those motions are not before the Court at this time. Therefore, this matter is now before the Court only on the Plaintiffs' motions for injunctive relief and to proceed under pseudonyms.

## ANALYSIS

I.     **STANDARD OF REVIEW**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). The Court must consider four factors in determining whether to grant preliminary injunctive relief: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest. *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. The party requesting injunctive relief bears the complete burden for showing the above factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

II.     **THREAT OF IRREPARABLE HARM**

To obtain a preliminary injunction, a plaintiff must show not only that irreparable harm is possible but that it is "**likely** in the absence of an injunction." *Winter*, 555 U.S. at 22. The Supreme Court has made clear that a "'possibility' standard is too lenient." *Id.* Although courts frequently "focus on likelihood of success on the merits as a threshold issue" when evaluating preliminary injunction motions, *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 n.5 (8th Cir. 2008), it is not always determinative

or even the most appropriate factor for a court's attention. "Indeed, in some cases, lack of irreparable injury is the factor that should begin and end the *Dataphase* analysis." *Id.* "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc.*, 346 F.3d at 844 (citing *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996)). Such is the case here.

The Plaintiffs in this case allege two primary types of harm arising out of compliance with MIFPA's tribal notice provisions. First, the disclosure of their identities to their tribes will violate their privacy by informing their communities of a pregnancy and adoption proceeding they have gone to great lengths to keep secret, and second, the tribes' intervention in their adoption proceeding risks interference with their preferred adoption plan. Specifically, John and Jane Doe are concerned that notice to the tribes "will result in word spreading in the tribal offices of their adoption plan, and if the tribes seek out alternative placements then their families and others in the tribal community will learn of their private adoption plan." (Compl. ¶ 37.) They have expressed "alarm[] at the breach of confidentiality that would ensue if the tribe intervened in their adoption proceeding and obtained discovery of very private adoption files and records . . . ." (*Id.* ¶ 38.) They are further concerned that the disclosure of their identities to their tribal communities will disrupt their chosen adoptive route by resulting "in embarrassment and immense pressure to deviate from what Jane and John Doe have determined to be the best decision for Baby Doe. This will also provide the tribes with the opportunity to intervene and interfere with what Jane and John Doe have determined to be the best decision for Baby Doe." (*Id.* ¶ 37.)

These alleged harms are certainly serious, and may well be "irreparable" in nature. The tribe cannot reverse their knowledge of the Plaintiffs' identities once informed, and the Plaintiffs would have limited recourse once the tribe intervened in the adoption. Notwithstanding the irreparability of the harm the Plaintiffs allege, however, the Court finds that a preliminary injunction is not warranted in this case because the Plaintiffs have failed to show that these harms are likely to occur.

With respect to the concern that their identities will be disclosed, the Plaintiffs have not shown why the confidentiality provisions in the Minnesota statutes are insufficient to protect their personal information. As a preliminary matter, the MIFPA provision requiring notice to the tribe contemplates the concerns raised by the Plaintiffs and offers parents the opportunity to object to the personal information disclosure: "The [adoption] agency or notifying party shall include in the notice [to the tribe] the identity of the birth parents and child **absent written objection by the birth parents**." Minn. Stat. § 260.761, subd. 3 (emphasis added). Thus, by providing written objection to the disclosure of their identities, John and Jane Doe can prevent notice to the tribe from disclosing their names or the name of Baby Doe.

Although the Plaintiffs could avoid the disclosure of their identities in the notice provided to the tribe, there are secondary concerns about disclosure of personal information contained in the adoption file once the tribe is notified of the proceeding and has a right to discovery. But this, too, can be avoided. "A [Minnesota state] district court has broad discretion under Minn[esota] R[ule] [of] Civ[il] P[rocedure] 26.03 to fashion protective orders and to order discovery only on specified terms and conditions." *In re*

*Paul W. Abbott Co., Inc.*, 767 N.W.2d 14, 17-18 (Minn. 2009) (internal quotation marks omitted). Rule 26.03 allows for a court, where "justice requires[,] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by limiting discovery in a number of enumerated ways, including ordering "that the discovery not be had." Minn. R. Civ. P. 26.03. As this Court has recognized by granting the Plaintiffs' motion to proceed under pseudonyms, this case is one in which a protective order is entirely appropriate to avoid both embarrassment and undue burden. The Hennepin County District Court judge presiding over John and Jane Doe's adoptive proceeding possesses broad authority under Rule 26.03 to fashion a protective order during subsequent stages of the adoptive proceeding that would prevent the disclosure to the tribe of the Plaintiffs' private or sensitive information. Therefore, the Court finds that there is no threat to the Plaintiffs of irreparable harm from the disclosure of personal information in the absence of a federal injunction.

As to the Plaintiffs' fear that the tribe will intervene in the adoption, Commissioner Moose has prepared a Covenant Not to Intervene, on behalf of the Mille Lacs Band of Ojibwe, in John and Jane Doe's state court adoptive proceeding. (Mille Lacs Band of Ojibwe Covenant Not to Intervene, June 25, 2015, Docket No. 26.) The document, signed by Commissioner Moose, pledges to "unconditionally and irrevocably covenant not to intervene in the adoptive proceeding venued in Hennepin County District Court." (*Id.*) In light of this Covenant – which Commissioner Moose represented to the Court is ready to be filed as soon as he receives the case number for the Hennepin County

District Court adoptive proceeding – the Court concludes that it is extremely unlikely the tribe will intervene in the adoptive proceedings for Baby Doe.

Because the Court concludes that there is no threat of irreparable harm, the Court need not reach the other *Dataphase* factors. The Court will deny the Plaintiffs' request for a preliminary injunction. The Plaintiffs' Complaint is not exclusively limited to a request for injunctive relief,[2] and therefore this Order does not dispose of the case in its entirety.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Plaintiffs' Motion to Proceed under Pseudonyms [Docket No. 6] is **GRANTED**.

2. The Plaintiffs' Motion for a Preliminary Injunction [Docket No. 8] is **DENIED**.

DATED: July 2, 2015　　　　　　　　　　　　　s/ John R. Tunheim
at Duluth, Minnesota.　　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　　　United States District Court

---

[2] The Court notes that this case presents a serious question moving forward as to whether abstention is appropriate on the constitutional questions, pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), in light of the ongoing state court adoptive proceeding. Assuming without deciding that *Younger* presents no problem at the preliminary injunction stage, the Court finds that an injunction is not appropriate in light of the absence of a threat of irreparable harm.