UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JANE DOE and JOHN DOE, *individually, and on behalf of Baby Doe*,<br><br>Plaintiffs,<br><br>v.<br><br>EMILY JOHNSON PIPER, *in her official capacity as Commissioner of the Minnesota Department of Human Services*, and LORI SWANSON, *in her official capacity as Minnesota Attorney General*,<br><br>Defendants. | Civil No. 15-2639 (JRT/DTS)<br><br>**MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

> Jeffrey S. Storms, **NEWMARK STORMS LAW OFFICE**, 100 South Fifth Street, Suite 2000, Minneapolis, MN 55402; Andrew M. Irlbeck, **ANDREW IRLBECK, LAWYER, CHARTERED**, 100 South Fifth Street, Suite 2100, Minneapolis, MN 55402; Mark D. Fiddler, **FIDDLER LAW OFFICE, P.A.**, 6800 France Avenue South, Suite 190, Edina, MN 55435; and R. Daniel Rasmus, **HOVLAND AND RASMUS, PLLC**, 6800 France Avenue South, Suite 190, Edina, MN 55435, for plaintiffs.
>
> Scott H. Ikeda and Aaron Winter, Assistant Attorneys General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for defendants.

Plaintiffs Jane and John Doe (the "Does") brought this action seeking injunctive relief and a declaration that the portions of the Minnesota Indian Family Preservation Act ("MIFPA"), Minn. Stat. §§ 260.751–260.835, that require notice to Indian tribes for any voluntary adoption involving an "Indian child" and provide relevant Indian tribes a right

of intervention are unconstitutional. The remaining defendants in this case are the Commissioner of the Minnesota Department of Human Resources, Emily Johnson Piper, and the Minnesota Attorney General, Lori Swanson (collectively, "Defendants"). Both sides move for summary judgment. While this case presents interesting and unclear questions of constitutional law, the Court finds the Does' action is now moot, and therefore, the Court must grant Defendants' motion and deny the Does' motion.

## BACKGROUND

**I.     MIFPA**

The Does challenge several adoption procedures codified in MIFPA.

> The purposes of [MIFPA] are to (1) protect the long-term interests, as defined by the tribes, of Indian children, their families as defined by law or custom, and the child's tribe; and (2) preserve the Indian family and tribal identity, including an understanding that Indian children are damaged if family and child tribal identity and contact are denied.

Minn. Stat. § 260.753. MIFPA is broader than its federal counterpart – the Indian Child Welfare Act of 1978 ("ICWA") – which similarly seeks to address the concern "that an alarmingly high percentage of Indian families [have been] broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions." 25 U.S.C. § 1901(4); *see also Adoptive Couple v. Baby Girl*, 133 S. Ct. 2552, 2557 (2013) (discussing the motivation for ICWA).

Both ICWA and MIFPA establish procedures for Indian tribes to push state courts to place Indian children with Indian families when those children are put up for adoption.

The statutes establish preferences for placing Indian children with Indian families absent a showing of good cause justifying action to the contrary. 25 U.S.C. § 1915(a); Minn. Stat. § 260.771, subd. 7. Both statutes also require notice to tribes and allow for the tribes' intervention in proceedings under certain circumstances. *See* 25 U.S.C. § 1912(a); Minn. Stat. § 260.761, subds. 2-3, 6.

Notably, ICWA's adoption provision applies only to **involuntary** adoption proceedings. *See* 25 U.S.C. § 1912(a); *Adoptive Couple*, 133 S. Ct. at 2557 (discussing ICWA's governance of "involuntary termination of parental rights"). MIFPA's adoption provisions apply more broadly, encouraging placement of Indian children with Indian parents in **voluntary** as well as **involuntary** adoptions. *Compare* 25 U.S.C. § 1912 (involuntary proceedings only), *with* Minn. Stat. § 260.761, subd. 3 (voluntary proceedings).

MIFPA's definition of "Indian child" is also broader than ICWA's. MIFPA defines "Indian child" as any "unmarried person who is under age 18" who is either "(1) a member of an Indian tribe; or (2) **eligible for membership in an Indian tribe.**" Minn. Stat. § 260.755, subd. 8 (emphasis added). In contrast, ICWA defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe **and is the biological child of a member of an Indian tribe**." 25 U.S.C. § 1903(4) (emphasis added). The Does note that at least three Indian tribes allow for membership on the grounds of blood

quantum or lineage.[1] Thus, based on a child's ancestry alone, MIFPA could extend to the children of non-members of tribes that rely solely on blood quantum for eligibility.[2]

The Does challenge two particular MIFPA provisions. First, the Does challenge the "notice" provision, under which "a local social services agency, private child-placing agency, petitioner in the adoption, or any other party" must notify the applicable "tribal social services agency" if the agency or person "has reason to believe that a child who is the subject of an adoptive or preadoptive placement proceeding is or may be an 'Indian child'" under the statute. Minn. Stat. § 260.761, subd. 3. Second, the Does challenge the "intervention" provision, which provides an Indian child's tribe the right to intervene at any point in adoption proceedings involving the child. *Id.*, subd. 6.

## II. THE DOES' ADOPTION PROCEEDING AND THIS ACTION

In April 2015, Baby Doe was born to the Does in Minneapolis, Minnesota. (Verified Compl. for Declaratory & Injunctive Relief ("Compl.") ¶ 28, June 3, 2015,

---

[1] (*See* Decl. of Jeffrey S. Storms, Ex. F, Art. IV, § 1(b), Jan. 20, 2017, Docket No. 96 (constitution of Otoe-Missouria Tribe of Oklahoma providing for membership of "[a]ll persons who are of at least one-eight (1/8) degree Otoe-Missouria Tribal blood"); *id.*, Ex. G, Art. II, § 1(b) (constitution of the Hualapai Indian Tribe including as eligible for membership "[a]ll persons one-fourth (1/4) degree or more Hualapai Indian blood); *id.*, Ex. H, Art. II, § 1(c) (constitution of the Yavapai-Apache Nation making "[a]ll persons who are one fourth (1/4) or more Yavapai-Apache Indian blood" eligible for membership).)

[2] Defendants note that the tribe at issue in this case – Mille Lacs Band of Ojibwe – requires more than blood quantum to become a member. To be eligible for membership in the Mille Lacs Band of Ojibwe, an individual must have at least one-fourth Minnesota Chippewa Indian blood, the individual must be born to a member, and an application must be filed on the individual's behalf within one year of birth. (Decl. of Aaron Winter, Ex. 4, Art. II, § 1(c), Dec. 30, 2016, Docket No. 88.)

Docket No. 1.)[3]  The Does are an unmarried couple, together since 2003, who live together with their children.  (*Id.* ¶¶ 5, 29.)  The Does are both enrolled members of Indian tribes – Jane Doe in the Mille Lacs Band of Ojibwe – but neither domiciles within or resides on an Indian reservation.  (*Id.* ¶¶ 3-4.)[4]

No court terminated the Does' parental rights.  (*Id.* ¶ 30.)  Instead, the Does decided to voluntarily place Baby Doe for adoption and relinquish their parental rights.  (*Id.*)  The complaint states that the decision was "difficult," but the Does believe adoption to be in the child's best interests.  (*Id.* ¶¶ 30, 36.)

To facilitate Baby Doe's adoption, the Does engaged a private direct placement agency that would allow the Does to choose Baby Doe's adoptive parents.  (*Id.* ¶ 31.)  Neither of the chosen adoptive parents is of American Indian descent.  (*Id.* ¶ 34.)  The Does and the adoptive parents arranged an open adoption, under which the couples plan to "share pictures, text each other, and meet with Baby Doe from time to time."  (*Id.* ¶ 35.)  The couples also agreed that the adoptive parents will ensure Baby Doe learns about his Indian heritage.  (*Id.*)

The Does commenced an adoption proceeding in Hennepin County Juvenile Court in May 2015.  (*Id.* ¶ 41.)  Mark Fiddler, who represented the Does in the adoption proceeding, determined that the Does were required to comply with MIFPA in order to complete the adoption.  (Decl. of Mark D. Fiddler ("Fiddler Decl.") ¶¶ 1, 3, Dec. 30,

---

[3] The Does may rely on their complaint at the summary judgment stage because it is a verified complaint, which is the "equivalent of an affidavit for the purposes of summary judgment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001).

[4] The complaint does not specify which tribe John Doe is enrolled in.

2016, Docket No. 93.) The Does did not want to comply with the notice requirement because they did not want any tribe to learn of their adoption or risk a tribe's intervention, which could lead to deviation from the adoption plan that they determined was best for their child. (Compl. ¶ 37.)

On June 3, 2015, the Does brought this action, seeking to enjoin Defendants – as well as a then-defendant, Samuel Moose, the Commissioner of Health and Human Services for the Mille Lacs Band of Ojibwe – from enforcing the notice and intervention provisions of MIFPA. On June 25, 2015, Moose filed a covenant not to intervene in Baby Doe's adoption. (Index of Exs., Ex. A, June 25, 2015, Docket No. 26.) On July 2, 2015, the Court denied the Does' motion for preliminary injunction. *Doe v. Jesson*, No. 15-2639, 2015 WL 4067170 (D. Minn. July 2, 2015). The Court found no threat of irreparable harm because the state court could protect the Does' identities and the Mille Lacs Band of Ojibwe had already agreed not to intervene. *Id.* at *4-5.

The Does signed their consents to the adoption on July 7, 2015. (Aff. of Mark D. Fiddler ¶ 5, July 16, 2015, Docket No. 44.) Baby Doe's adoption was finalized on August 13, 2015. (Fiddler Decl. ¶ 6.)

On February 25, 2016, the Court denied Defendants' motions to dismiss. *Doe v. Piper*, 165 F. Supp. 3d 789, 808 (D. Minn. 2016). The Court rejected several challenges to the Does' standing – including a mootness challenge – and deferred the merits issues for further briefing. *Id.* at 798-808. The Court granted Moose's motion to dismiss, finding the tribal officer was not a proper defendant. *Id.* at 803-05.

Both sides now move for summary judgment. The Does seek a declaratory judgment and injunctive relief based on their due process and equal protection claims. Defendants raise additional standing arguments regarding *Ex parte Young*, causation/redressability, and mootness, and they also argue for dismissal of both the Does' claims on the merits. The Court need only address Defendants' mootness argument.

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Defendants argue that this case is moot because Baby Doe was successfully adopted without specific notice to or intervention by any tribe. Federal court jurisdiction is limited to actual "Cases" and "Controversies." U.S. Const. Art. III, § 2. The case-or-controversy requirement limits the power of the federal judiciary to deciding "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). "To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for*

*Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "If an issue is moot in the Article III sense, [the court] ha[s] no discretion and must dismiss the action for lack of jurisdiction." *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005).

The Does contend that the Court still has jurisdiction under an exception to the mootness doctrine because the challenged conduct is "capable of repetition, yet evad[es] review." *Davis v. FEC*, 554 U.S. 724, 735 (2008) (quoting *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). This "exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (quoting *Wisc. Right to Life*, 551 U.S. at 462).

The mootness question in this case turns on the first prong, for which "the proper inquiry is whether the [challenged] activity *is by its very nature short in duration*, so that it could not, or probably would not, be able to be adjudicated while fully alive." *Hickman v. Missouri*, 144 F.3d 1141, 1143 (8th Cir. 1998) (quoting *Clark v. Brewer*, 776 F.2d 226, 229 (8th Cir. 1985)). Prior cases found to satisfy this prong involved short time frames of a biological or statutory nature, outside of the control of the courts, such as the term of a pregnancy in *Roe v. Wade*, 410 U.S. 113, 125 (1973), or the duration of a prison sentence in *Turner v. Rogers*, 564 U.S. 431, 440 (2011). In contrast, the activity the Does contend is short by nature in this case is a state-court adoption proceeding. While the Does argue that a state adoption proceeding typically concludes within ninety days from the filing of the petition, they do not argue that adoption proceedings are necessarily

limited to that time period or that the ninety-day window is outside of a court's control. For example, the Does' counsel conceded at the hearing on the present motions that one could challenge MIFPA's constitutionality within an adoption proceeding itself, in which case the state court could extend the length of the proceeding as necessary to hear such a challenge.

In response to Defendants' mootness arguments at the motion-to-dismiss stage, the Does relied on Minnesota's statutory requirement that birth parents execute consents within sixty days after a child's placement in a prospective adoptive home. Minn. Stat. §§ 259.24, subd. 2a, 259.47, subd. 7. The Does argued that they could not execute the consents until after satisfying the tribal notice requirement because MIFPA states that "[n]o preadoptive or adoptive placement proceeding may be held until at least ten days after receipt of the notice by the tribe." Minn. Stat. § 260.761, subd. 3; (*see also* Compl. ¶ 41).

Statutory requirements may establish a time frame that by its nature is so short that it would prevent ligation during a live controversy. *E.g., Dutkiewicz v. Dutkiewicz*, 957 A.2d 821, 827 (Conn. 2008) (finding that the statutory structure of the state's parenting education requirement established a "functionally insurmountable time [constraint]" (quoting *Liosel v. Rowe*, 660 A.2d 323, 383 (Conn. 1995)). If, in fact, MIFPA's statutory scheme required biological parents to satisfy the tribal notice requirement within sixty days of initiating the adoption proceeding or be found to have abandoned their child, then challenges to this scheme likely would evade review. But further consideration suggests that the statute does not function in this manner.

When asked how a challenge to MIFPA would proceed in state court, the Does' counsel suggested that the birth parents could seek extensions to the sixty-day timeline and avoid any abandonment issues under the statute. Moreover, the actual procedure contemplated in the statutory scheme is not entirely clear. While the Does argued that they were statutorily required to consent within sixty days of the initial placement or risk a finding of abandonment and that they could not consent before satisfying MIFPA's tribal notice requirement, the Does already had a "preadoptive custody order signed by the Hennepin County Juvenile Court" at the time of the complaint. (Compl. ¶ 41.) Additionally, an abandonment finding is not automatic even under the Does' reading of the statute, and if the delay is caused by a pending constitutional challenge, it seems particularly unlikely to result. *See* Minn. Stat. § 259.47, subd. 8 (stating that when a birth parent fails to execute consent as required within sixty days, the court "shall order the local social services agency to determine whether to commence proceedings for termination of parental rights on grounds of abandonment as defined in section 260C.301"); Minn. Stat. § 260C.301, subds. 1-2 (listing bases for determining whether to terminate parental rights – one of which is abandonment – and specifying evidence that gives rise to a presumption of abandonment, including (1) no contact with a child on a regular basis and a lack of demonstrated consistent interest in the child's well-being for six months, or (2) desertion by a parent "under circumstances that show an intent not to return to care for the child").

At oral argument, the Does' counsel argued that challenging MIFPA within an adoption proceeding would present practical challenges. But the evading-review

exception to the mootness doctrine does not ask whether the current case is the most practical vessel for hearing a challenge; rather, the Court must consider whether the case arises in a context under which it "could not, or probably would not, be able to be adjudicated while fully alive." *Hickman*, 144 F.3d at 1143 (quoting *Clark*, 776 F.2d at 229). Here, the Does concede that a similar challenge could proceed while the conflict is fully alive if adjudicated within the adoption proceeding itself. The practical issues the Does raise regarding the care and interests of the child during the pendency of such a challenge could properly be handled by a state court, which is likely accustomed to the time-sensitive nature of adoption and other child-custody proceedings.

Overall, the Does do not point to anything in MIFPA that renders the adoption procedure inherently short in duration in a manner that is outside of a court's control. Accordingly, after further briefing and reflection, the Court finds insufficient evidence suggesting that this case falls within the narrow exception to the mootness doctrine for harms capable of repetition yet evading review.

This case presents significant constitutional questions, including whether MIFPA's extension of the tribal notice requirement and intervention right to voluntary adoption proceedings implicates the biological parents' fundamental right to care, custody, and control of their children, *see Troxel v. Granville*, 530 U.S. 57, 65-66 (2000); *In re N.N.E.*, 752 N.W.2d 1, 8-9 (Iowa 2008); whether those portions of MIFPA are entitled to rational-basis review because they are authorized by federal law or further a federal policy benefitting Indians, *see EEOC v. Peabody W. Coal Co.*, 773 F.3d 977, 987-88 (9th Cir. 2014) (applying *Morton v. Mancari*, 417 U.S. 535, 554-55 (1974)); and

whether the statute could survive strict scrutiny, if applicable, under either theory. Presented in the proper context, these questions merit careful consideration. But the Court cannot reach them due to jurisdictional constraints. Accordingly, the Court will grant Defendants' motion and dismiss the Does' action as moot.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 85] **GRANTED.**

2. Plaintiffs' Motion for Summary Judgment [Docket No. 90] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 4, 2017                          _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                       Chief Judge
                                         United States District Court